Andrew G. Pearson (*Pro Hac Vice Forthcoming*)
pearson@fr.com
Jeffrey A. Shneidman (*Pro Hac Vice Forthcoming*)
shneidman@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA  02210
Telephone: (617) 542-5070
Facsimile:  (617) 542-8906

Michael R. Headley (CA SBN 220834)
headley@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 400
Redwood City, CA  94063
Telephone: (650) 839-5070
Facsimile:  (650) 839-5071

Attorneys for Plaintiff
OKTA, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| OKTA, INC., <br><br> Plaintiff, <br><br> v., <br><br> BIOGY, INC., <br><br> Defendant. | Case No. _____ <br><br> **COMPLAINT FOR DECLARATORY JUDGMENT** |

**NATURE OF THE ACTION**

1. This is an action for a declaratory judgment of non-infringement of U.S. Patent No. 7,669,236 ("the '236 patent," attached as Exhibit A) against Defendant Biogy Inc. ("Biogy"). Plaintiff Okta, Inc. ("Okta") seeks a declaratory judgment that it does not infringe any claim of the '236 patent and that its customers do not infringe the '236 patent by using Okta's products.

2. Okta is a software and services company that offers an industry-leading identity management and authentication platform.

3. Some of Okta's software and services generate or process time-based one-time passcodes ("TOTPs"), for example, as one of several possible factors that might be used in multi-factor authentication. That collection of software and services is referred to hereafter as the "Okta Accused Products." Okta licenses the Okta Accused Products in the United States to customers, and both Okta and Okta's customers use the Okta Accused Products.

4. As described below, Biogy has sent letters to multiple Okta customers, threatening them with legal action based on purported infringement of the '236 patent due to the customers' generation and use of TOTP codes via the Okta Accused Products. Furthermore, Biogy has sued one of Okta's customers based on purported infringement of the '236 patent due to the customers' use of the TOTP functionality provided by the Accused Product. *See Biogy, Inc. v. Albertsons Companies, Inc., et al.*, 2:24-cv-00838 (E.D. Tex.).

5. While Biogy's letters purport to accuse Okta's customers of infringement, Biogy in fact is accusing Okta of directly and indirectly infringing the '236 patent. As set forth in further detail below, Okta uses the Okta Accused Products to generate and process TOTP codes itself, in the same manner as its customers who Biogy accuses of infringement. Further, Okta provides the purportedly infringing TOTP functionality in the Okta Accused Products to its customers.

6. Biogy continues today to accuse Okta's customers of the Okta Accused Products of infringing the '236 patent and to threaten these customers with litigation.

7. Biogy's infringement allegations are baseless. Neither Okta, nor use of the Okta Accused Products, infringes the '236 patent, because Biogy's patent claims do not encompass the TOTP functionality that Okta provides. Okta brings this lawsuit to put a stop to Biogy's campaign

COMPLAINT FOR DECLARATORY JUDGMENT
CASE NO. _____

of harassing Okta's customers with meritless claims of patent infringement related to Okta's products. A judicial declaration is necessary to determine the respective rights of the parties regarding the '236 patent and to resolve the real, immediate, and justiciable controversy concerning these issues.

8. A real, immediate, and justiciable controversy exists between Okta and Biogy as to whether use of the Okta Accused Products infringes the '236 patent, whether by Okta or its customers. Okta respectfully seeks a judicial determination that the '236 patent is neither directly nor indirectly infringed by Okta or its customers through use of the Okta Accused Products.

## PARTIES

9. Plaintiff Okta is a Delaware corporation having its principal place of business at 100 First Street, San Francisco, California, 94105. Okta was founded in 2009 in San Francisco. It is a pioneer of the "Identity-as-a-Service" industry, and its products provide customers with robust ways to control and secure authentication into websites, applications, devices, and more.

10. Defendant Biogy is a Delaware corporation. On information and belief, Biogy has its principal place of business at 1449 Lake Street, San Francisco, California, 94118, which is the principal and mailing address listed for Biogy, Inc. with the California Secretary of State. Biogy alleges it is the owner of the '236 Patent. While Biogy purports to be "a biometric and cybersecurity company," on information and belief, it does not offer any biometric and cybersecurity products or services.

## JURISDICTION AND VENUE

### *Subject Matter Jurisdiction*

11. This action arises under the Declaratory Judgment Act, 28 U.S.C. §§2201-2202, and under the Patent Laws of the United States, 35 U.S.C. §§ 101, *et seq.*

12. This Court has subject matter jurisdiction over the claims alleged in this action because this Court has jurisdiction over declaratory judgment claims arising under the Patent Laws pursuant to 28 U.S.C. §§1331, 1338, 2201, and 2202.

13. This Court can provide the relief sought in this Declaratory Judgment Complaint because an actual case and controversy exists between the parties within the scope of this Court's

1  jurisdiction pursuant to 28 U.S.C. § 2201 in view of Biogy's patent infringement allegations.
2  Biogy's allegations and actions have created a real, live, immediate, and justiciable case or
3  controversy between Biogy and Okta.

*Personal Jurisdiction*

4
5       14.     This Court has personal jurisdiction over Biogy.  Biogy pleaded that it has "a
6  principal place of business in San Francisco, California" in other litigation that Biogy filed in
7  which Biogy accused an Okta customer of infringing the '236 patent.  *Biogy, Inc. v. Albertsons*
8  *Companies, Inc., et al.*, 2:24-cv-00838 (E.D. Tex.), Dkt. 1, ¶ 1.  Biogy also identifies its principal
9  address as being located in San Francisco, California to the California Secretary of State.
10      15.     Biogy has also purposefully directed its conduct at this District by making
11  accusations of infringement against the Okta Accused Products, which are made in this District.

*Venue*

12
13      16.     Venue is proper in this Court because Biogy "resides" in this district under Federal
14  venue laws because it is subject to personal jurisdiction in this District (*see* 28 U.S.C. § 1391(c)(2)
15  & (d)).
16      17.     Venue is also proper in this District because both Okta's and Biogy's principal
17  places of business are in this District.
18      18.     Venue is also proper in this Court under 28 U.S.C. § 1391 because a substantial
19  part of the events giving rise to the claim presented in this Complaint occurred in this district (28
20  U.S.C. §1391(b)(2)).  For example, Okta makes the Okta Accused Products in this District.

21  **BIOGY'S PATENT INFRINGEMENT ALLEGATIONS**

22      19.     Biogy has serially transmitted near-identical letters to Okta's customers titled
23  "Notice of Infringement of U.S. Patent Number 7,669,236."  Each letter alleges that an Okta
24  customer infringes the '236 patent by using time-based one-time codes and attaches a claim chart
25  purporting to show that infringement.  Exhibit B is one such exemplary letter sent to Okta's
26  customer Albertsons Companies, Inc. on April 24, 2024.  Exhibit C is an exemplary claim chart
27  that Biogy attached to this letter.
28

20. Biogy has sent identical or near-identical letters attaching identical or near-identical claim charts to multiple Okta customers.

21. Each letter claims that the '236 patent covers a "standard technique for issuing one-time passwords: Time-based One-Time Passwords, or TOTP," and that to the extent the Okta customer "is using one-time passcodes that comply with the TOTP standard, that use infringes the '236 patent." Ex. B at 1–2.

22. The claim chart attached to each letter alleges infringement of claims 5, 12, 14, and 24 of the '236 patent "via implementation of the TOTP Algorithm, RFC 6238." Ex. C at 1. Each chart contends that "[t]o the extent that [Okta's customer] is using the TOTP algorithm to generate its time-based 'verification codes' and provide access to [Okta's customer's users], [Okta's customer] is infringing the claimed methods as described in this claim chart." *Id.*

23. The infringement allegations in Biogy's letters and claim charts are not specific to the individual circumstances of the Okta customers to whom they are addressed and are not based on customer-specific implementation details. Instead, Biogy alleges that *any* implementation of the "TOTP Algorithm" infringes claims 5, 12, 14, and 24 of the '236 patent. The only customer-specific evidence cited in the claim chart that Biogy sends to Okta's customers is a screenshot of the customer's product, service, or website that purports to show merely that the customer offers one-time passcodes (*e.g.*, in the context of offering multi-factor authentication to the customer's users).

24. Biogy's infringement allegations against Okta's customers target the time-based one-time passcode functionality provided to the customers by the Okta Accused Products, including through the Okta Identity Engine and Okta Classic Engine. Multiple Okta customers have made indemnity requests to Okta, requesting that Okta defend and indemnify these customers against Biogy's infringement allegations. Due to Biogy's actions and allegations, Okta has a potential obligation to defend and/or indemnify one or more of these customers based on Okta's contracts with these customers should Biogy act on its threats to sue.

25. Biogy recently sued one of Okta's customers based on infringement allegations that are identical to the infringement allegations that Biogy has included in its demand letters to Okta's

other customers. See *Biogy, Inc. v. Albertsons Companies, Inc., et al.*, 2:24-cv-00838 (E.D. Tex.), Dkt. 1.

26. Biogy's litigation against Albertsons Companies further confirms that the Okta Accused Products are a basis for Biogy's infringement claim, and that Biogy contends that use of the Okta Accused Products infringes the '236 patent. For example, the sole discovery request served by Biogy in its litigation against the Albertsons Companies specifically identified Okta and sought data related to one-time passcodes provided by Okta in connection with Okta's dealings with Albertsons Companies.

27. Biogy's infringement allegations against Okta's customers are effectively accusations that Okta itself infringes the '236 patent, both directly (through use of the Okta Accused Products) and indirectly (by providing the Okta Accused Products to customers and instructing them on the use of the Okta Accused Products in a manner that purportedly infringes the patent).

## CLAIM FOR RELIEF

### FIRST CLAIM FOR RELIEF

*Declaratory Judgment of Noninfringement of the '236 Patent*

28. Okta incorporates the allegations set forth in paragraphs 1–27 as though fully set forth therein.

29. Neither Okta, nor Okta's customers of the Okta Accused Products, nor the Okta Accused Products, infringe or have infringed, induce or have induced others to infringe, or contribute or have contributed to infringement by others of, any claim of the '236 patent, including claims 5, 12, 14, or 24. This is at least because neither Okta nor its customers nor the Okta Accused Products perform the method steps claimed within the '236 patent.

30. For example, as to claim 5, neither Okta's nor its customers' use of the Okta Accused Products practice at least:

   a. "generating, via a machine, a passcode that is valid temporarily, wherein the passcode is based on information associated with a user";

      b. "determining whether an attempted access is permitted, based on the passcode generated, by at least determining whether the passcode generated matches a passcode received";

      c. "generating a current passcode generator based on the information";

      d. "generating the passcode from the current passcode generator";

      e. "the method further including at least if it is determined that the passcode generated matches the passcode received … granting access to the user";

      f. "the method further including at least if it is determined that the passcode generated matches the passcode received … applying a function to the current passcode generator to generate a new passcode generator";

      g. "the method further including at least if it is determined that the passcode generated matches the passcode received … storing the new passcode generator in place the current passcode generator";

31. As to claim 12, neither Okta's nor its customers' use of the Okta Accused Products practice claim elements including, at least:

      a. "retrieving at least one passcode generator from a storage unit associated with the machine";

      b. "generating at least one passcode from the at least one passcode generator";

      c. "determining whether the at least one passcode of the at least one passcode generated matches the passcode received";

      d. "if the one passcode matches the passcode received, … granting the user access to a secure entity";

      e. "if the one passcode matches the passcode received, … perturbing the at least one passcode generator of the at least one passcode generator to create a new passcode generator";

      f. "if the one passcode matches the passcode received, … storing the new passcode generator in place of the at least one passcode generator."

32. As to claim 14, neither Okta's nor its customers' use of the Okta Accused Products practice claim elements for all of the reasons listed above as to claim 12 (from which claim 14 depends) and in addition at least:

    a. "wherein the at least one passcode is only one passcode"

    b. "if the one passcode and the passcode received do not match, denying the user access to the secure entity"

33. As to claim 24, neither Okta's nor its customers' use of the Okta Accused Products practice claim elements including, at least:

    a. "after a registration process is complete, receiving a request for access, from a user, the request including a first user-generated passcode that is valid temporarily, and that is generated based on information associated with the user";

    b. "in response to the receiving of the user-generated passcode, generating, via a machine that runs an automated administrator, an administrator-generated passcode that is valid temporarily, wherein the administrator-generated passcode is generated by the automated administrator based on information associated with the user by at least the automated administrator generating the administrator generated passcode from a current passcode generator that is based on the information"

    c. "determining whether an attempted access is permitted, based on whether the user-generated passcode and the administrator-generated passcode match";

    d. "if the user-generated passcode and the administrator-generated passcode match permitting the attempted access";

    e. "generating a new passcode generator from the current passcode generator";

    f. "storing the new passcode generator in place of the current passcode generator in a storage unit associated with the machine."

34. The Okta Accused Products do not practice these claim limitations at least because the Okta Accused Products do not generate passcodes or passcode generators that satisfy all of the requirements of the claims. For example, the Okta Accused Products do not base a passcode (or a generator) on information associated with a user. Nor do the Okta Accused Products generate a

1  passcode from a current passcode generator. Nor do the Okta Accused Products perturb a current
2  passcode generator to generate a new passcode generator, or use any current password generator to
3  create a new passcode generator. Nor do the Okta Accused Products store any such new passcode
4  generator in place of a prior/current passcode generator.

5       35.    As a result of the acts and allegations described in the foregoing paragraphs, there
6  exists a definite and concrete, real and substantial, justiciable controversy between Okta and Biogy
7  regarding the noninfringement of the '236 patent, including with respect to the Okta Accused
8  Products. This controversy is of sufficient immediacy and reality to warrant issuance of a
9  declaratory judgment.

## PRAYER FOR RELIEF

**WHEREFORE**, Okta respectfully requests the Court to enter judgment in its favor against Biogy:

A. For judgment that Okta, Okta's customers of the Okta Accused Products, and the Okta Accused Products, do not infringe and have not infringed under 35 U.S.C. § 271 (or any subsection thereof) any claim of the '236 patent, either literally or under the doctrine of equivalents, and that none of them are liable for damages or injunctive relief based on any claim of the '236 patent;

B. That the case be found exceptional under 35 U.S.C. § 285 and that Okta be awarded its reasonable attorneys' fees incurred in connection with this action;

C. For costs and expenses in this action; and

D. For such other and further relief as the Court deems just and proper.

Dated: April 14, 2025            FISH & RICHARDSON P.C.

                         By: /s/ Michael R. Headley
                                Michael R. Headley

                         Attorneys for Plaintiff
                         OKTA, INC.